IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

ELIZABETH MAYS, and
all others similarly situated,                                          OPINION AND ORDER

                          Plaintiffs,
   v.                                                                          14-cv-461-slc

GRAND DADDY'S, LLC, GERALD J. MORRELL and
EDWARD KRAIMER, JR.,
                          Defendants.

_____

       This is a hybrid collective action under the Fair Labor Standards Act (FLSA) and state law class action under Wisconsin's wage and hour laws. Plaintiff Elizabeth Mays contends that defendant Grand Daddy's, LLC, and its owners, defendants Gerald Julian Morrell and Edward Kraimer, Jr., violated federal and state wage and hour laws by failing to properly compensate her and other similarly situated individuals who worked as entertainers at Grand Daddy's Gentleman's Club. Mays has demanded judgment against defendants for unpaid wages and overtime compensation, interest on unpaid back wages, an incentive award for Mays for serving as a class representative, liquidated and punitive damages, reasonable costs and attorney's fees.

       Defendants have moved for summary judgment on behalf of a single defendant–Edward Kraimer, Jr.–on the ground that he is not an "employer" and therefore cannot be held individually liable for the alleged wage and hour violations.[1] Defendants have submitted evidence that Kraimer is not involved with hiring, firing, or supervising employees or anything else having to do with the

---

[1] Also pending is plaintiff Elizabeth Mays's motion to amend her summary judgment submissions to include a formal response to defendants' proposed findings of fact, which she neglected to include with her response to defendants' motion. Dkt. 45. This motion is granted.

      Defendants' opposition to the motion is logical, but this one fits into the "no harm, no foul" category. The instant summary judgment motion raises a discrete legal issue based on a narrow set of facts. In Mays's timely response to the motion, she submitted only two pieces of evidence, from which it is clear which of defendants' proposed facts she is disputing. Indeed, defendants were able to file a reply notwithstanding Mays's lack of a formal response. The lack of prejudice to defendants, along with this court's preference for deciding cases on the merits rather than technicalities, militate toward accepting Mays's late submission.

day-to-day running of the business that would qualify him as an "employer," The evidence submitted by Mays on this point fails to raise a genuine dispute as to Kraimer's role at the club. Therefore, I am granting defendants' motion.

OPINION

## I. Summary Judgment Standard

Summary judgment is proper where there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'" *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007) (quoting *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005)). In determining whether a genuine issue of material facts exists, the court must construe all facts in favor of the nonmoving party. *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007). Even so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, she must come forward with enough evidence on each of the elements of her claim to show that a reasonable jury could find in her favor. *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Conclusory allegations and self-serving affidavits, unsupported by the record, will not preclude summary judgment. *See Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

**II.  The Economic Realities Test**

The parties agree that Kraimer cannot be held individually liable for the alleged wage and hour violations unless he is an "employer."  The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  Two or more employers may jointly employ the employee, and all joint employers are individually responsible for compliance.  *Falk v. Brennan*, 414 U.S. 190, 195 (1973); 29 CFR § 791.2(a).  *See also Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (noting that "employer" is defined broadly in the FLSA to include individuals with supervisory authority who are responsible for the alleged violation in whole or in part); *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (collecting cases) ("[A] corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation jointly and severally liable under the FLSA for unpaid wages.").

Determining whether a party is an "employer" is a question of law that involves a review of the underlying facts.  *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206–07 (7th Cir. 1985).  The focus of this inquiry is on the "economic realities" of the situation.  *Id*. (citing *Goldberg v. Whitager House Co-op, Inc.*, 366 U.S. 28, 33 (1961)).  Factors that often are considered in assessing the economic realities of the situation are: (1) the power to hire and fire; (2) supervision or control of employee work schedules or conditions; (3) determination of the rate and method of payment; and (4) the maintenance of employee records.  *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1075 (N.D. Ill. July 14, 2014); *Hernandez v. City Wide Insulation of Madison, Inc.*, 2006 WL 1993552, at *1 (E.D. Wis. July 14, 2006); *George v. Badger State Industries*, 827 F. Supp. 584, 587 (W.D. Wis. July 20, 1993).

3

### III. Evidentiary Record

#### A. Undisputed Facts

In 2003, defendant Edward Kraimer, Jr., owned the property at 861 Grand Avenue in Schofield, Wisconsin, which is where Grand Daddy's Gentlemen's Club is now located. In 2003, the property was home to a dance club named Grand Central. Sometime in 2003, defendant Gerald Morrell approached Kraimer to express interest in leasing or buying the property for a "gentlemen's club."[2] Kraimer agreed. Soon thereafter, Morrell formed Grand Daddy's LLC to lease the property and run the business. Kraimer invested in the business: he and Morrell each own 50% and are the only two members of Grand Daddy's LLC.

In 2003, Kraimer, Kraimer Properties, LLC, Morrell and Grand Daddy's filed a lawsuit challenging the constitutionality of the city's ordinances restricting adult entertainment. Kraimer and his co-plaintiffs alleged that the city's ordinances violated the First Amendment and had harmed their business by preventing them from offering nude dance entertainment at the tavern located at 861 Grand Avenue. *Edward G. Kraimer, Jr., et. al. v. City of Schofield*, Case No. 03-C-473-C (W.D. Wis.). In support of plaintiffs' motion for summary judgment in that case, Kraimer presented a sworn affidavit averring that he and Morrell owned and "operated" the tavern. Aff. of Edward G. Kraimer, Jr., attached to Aff. of Timothy Burnett, dkt. 36, exh. A. Kraimer went on to explain that he and Morrell had sought to operate the tavern as a nude dance establishment but had been unable to do so because of the city's ordinances, and that they had lost profits as a result. *Id*. Plaintiffs ultimately prevailed in the lawsuit.

---

[2] According to Wikipedia, a "gentlemen's club" is a members-only private club originally set up by and for British upper class men in the 18th century, then popularized by the English upper-middle class in the following centuries. However, "in the United States, the term 'gentlemen's club' commonly is used to refer euphemistically to strip clubs." *See* https://en.wikipedia.org/wiki/Gentlemen%27s_club. In this case we are talking about the latter, not the former.

Morrell is paid a salary for his work managing the business of Grand Daddy's Gentlemen's Club.  Kraimer does not receive a salary from Grand Daddy's.  Kraimer does not sign employees' paychecks or tax returns and has never booked or scheduled any performers to dance at the club.

### B.  Defendants' Evidence

In support of their motion, defendants have submitted affidavits from Kraimer and Morrell, dkts. 31 and 32, in which each asserts that Kraimer is solely an investor in Grand Daddy's and that he has nothing to do with hiring, firing, or supervising employees, nor does he have any anything else to do with the day-to-day running of the business that would qualify him as an "employer" for the alleged labor law violations.  Specifically, Kraimer and Morrell have sworn that Kraimer was not involved in the decision to categorize dancers at the club as independent contractors, Kraimer has never hired or fired any dancers or other employees at the club, and Kraimer does not hold any position within the LLC or club that gives him any operational control or indicia of such control.[3]

### C.  Mays's Evidence

Mays has submitted two pieces of evidence: (1) the 2004 declaration by Kraimer filed in 03-C-473-C, referenced above; and (2) her own declaration, dkt. 37, in which she avers that during the course of her employment at Grand Daddy's from 2008 to 2012 she was "told by some of defendants' other employees that if [Kraimer] told [Morrell] to fire a dancer or bouncer, Morrell would do so" and that she "witnessed Ed Kraimer inform dancers and/or bouncers that they were fired."

---

[3] With their reply, defendants submitted affidavits from Grand Daddy's current and former managers, both of whom corroborate Kraimer and Morrell's testimony that Kraimer has no involvement with the day-to-day operation of the club, including the hiring or firing of employees.  Because Mays has not had the opportunity to respond to this evidence, I do not address it in this opinion.

IV. Analysis

Mays does not dispute that, defendants' evidence, standing alone, establishes that Kraimer is not an employer. Thus, the question before the court is whether the evidence submitted by Mays creates a genuine dispute of this material fact. I conclude that it does not.

I begin with Kraimer's affidavit in his 2003 lawsuit. Contrary to Mays's position, there is no inherent contradiction between the statements Kraimer made then and the statements he makes now. Although it is true that Kraimer stated generally in his earlier affidavit that he was an "operator" of the business, the only involvement with the business that he described was making decisions about the type of establishment it would be. For example, Kraimer explained how he and Morrell had responded to the city's zoning decisions and how the inability to provide nude dancing had impeded their plans for the business. These types of decisions are the sort one would expect to be made by a co-owner with a 50% stake in the venture. More to the point here, those statements by Kraimer do not contradict what he and Morrell have averred in this lawsuit: that Kraimer's role at Granddaddy's Gentlemen's Club is solely as an investor; that Morrell manages and operates the business; that Kraimer has nothing to do with the day-to-day business decisions that are made at the establishment; and that Kraimer does not hire, fire, supervise or manage employees. Accordingly, Kraimer's previous affidavit does not give rise to a genuine dispute of material fact in this lawsuit.

This leaves Mays's affidavit. As defendants point out, Mays's reports of what she was "told" by other employees is inadmissible. Mays has failed to establish that what these unnamed other employees told her was based upon their own personal knowledge, as required by Fed. R. Civ. P. 56(e). Further, this statement constitutes inadmissible hearsay under F.Rs. Ev. 801(c) & 802. Although Mays declares perfunctorily (in a footnote) that her statement about what other employees

told her is not hearsay under Fed. R. Evid. 801(d)(2), she fails to establish the foundational facts necessary for the rule's application, such as who the unnamed employees were, what jobs they performed, whether the statement was made while an employment relationship existed or that the statement is within the scope of the employee-employer relationship. Absent such foundational facts, there is no basis to find the statement admissible.

Also found wanting is Mays's vague statement outlining her own observations. True, a self-serving affidavit is an acceptable method for a non-moving party to establish a dispute of material facts; however, such an affidavit must be based on personal knowledge and must set forth specific facts showing there is a genuine issue for trial. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). Here, Mays's affidavit is so devoid of specifics as to raise significant doubt whether it really is based upon her personal knowledge. Notably, if Mays actually had seen Kraimer fire someone, then she ought to be able to provide at least *some* specifics about the event, such as approximately when and where it occurred, what she saw and heard, and whether other people were present, even if she doesn't know or recall who they were. At the very least, Mays ought to be able to say whether the person being fired was a woman (one of the dancers) or a man (one of the bouncers). But she doesn't, which indicates that she can't.

The lack of detail in Mays's affidavit, coupled with her "and/or" statement, leads me to infer that Mays does not actually have any specific recollection of Kraimer firing an employee. *Accord Filippo v. N. Indiana Pub. Serv. Corp.*, 141 F.3d 744, 749 (7th Cir. 1998) (plaintiff's general assertion that she "appealed the denial" of her grievance insufficient to create genuine issue of material fact whether Union acted arbitrarily in resolving grievance where Union asserted that plaintiff never filed required grievance report form and plaintiff presented no evidence that she filed the necessary form).

It gets worse for Mays: she cannot specify *when* she saw Kraimer inform "dancers and/or bouncers" that they were terminated.  Defendants point out that the statute of limitations for a FLSA claim is two years, three years if the violation was willful.  Plaintiff filed this claim in state court on May 28, 2014, meaning that plaintiffs must prove that Kraimer was an employer after May 28, 2011 or after May 28, 2012 (if there is no evidence of willfulness).  All Mays reports is that it was sometime "between 2008 and 2012" that she saw Kraimer inform bouncers and/or dancers that they were fired.  This five-year span includes 41 to 53 months that are outside the statute of limitations.  This is not to say that an act performed outside the statute of limitations cannot constitute evidence that Kraimer was an employer within the statute of limitations, but if this is *all* that Mays has, then, essentially, she's got nothing.  At most Mays has raised a metaphysical doubt as to Kraimer's role at the club.  That's not enough.

In short, Mays's vague and conclusory statements are insufficient to overcome Kraimer and Morrell's assertions that Kraimer has no involvement in the day-to-day management or operation of the business and has never hired, fired or supervised employees of the club.  *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001) ("conclusory statements, unsupported by the evidence of record, are insufficient to avoid summary judgment").  Accordingly, defendants' motion for summary judgment as to defendant Kraimer will be granted.

ORDER

IT IS ORDERED that:

(1) Plaintiff Elizabeth Mays's motion to amend her summary judgment response (dkt. 45) is GRANTED.

(2) Defendants' motion for summary judgment as to defendant Edward Kraimer, Jr. (dkt. 30) is GRANTED.

Entered this 15th day of July, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge